Good morning, your honors, and may it please the court. My name is Murray Singer, attorney for the appellant Tyjuan Stephenson. The fair and just reason for the withdrawal of appellant's plea in this case is that appellant's statements do not establish the ongoing and contemporaneous use of marijuana at the time of the offense that is necessary to make out the crime. 922 G3, the statute to which Mr. Stephenson pled, has been interpreted narrowly by this court to avoid vagueness concerns. It's actually been interpreted narrowly by circuits around the country. The narrow interpretation adopted by this court back in 2001 is that the use of marijuana must be ongoing and contemporaneous. So what do we make of the fact that he pled pursuant to an agreement, a provision 4F of which says that he admits that at the time of his possession of the firearms described above, he was an unlawful user of marijuana? Judge, I would categorize that as the ritualistic reading of an agreement that uses the statutory language. It's a piece of contracts. He signed it. He signed it. He was acting pro se at the time. He had standby counsel. He had standby counsel who also signed it. Yes, they never met in person. They're only, this was during some of the worst times of COVID. But it nevertheless says I've had a full opportunity to discuss this agreement with my standby counsel. Your Honor, the issue of. And also in that same paragraph, I fully agree with the contents of this agreement. I understand that your argument, but how do we have an error by the district court in this, given this record? Nobody addressed, the error by the district court, I would submit, is not following up with this reading of the language of the statute or of the information. It is common for district judges, when there is a recitation of a statement establishing guilt by a pleading defendant, to follow up and ask questions. To flesh it out a bit, to make sure that the defendant standing before the court understands what it is that they're saying. Not simply saying, reading a long paragraph with a number of different clauses in it and saying, do you understand? But actually following up and focusing, for purposes of this case right now, focusing on the ongoing and contemporaneous portion of it. Because that was never stated. It may be common, but is it necessary? I mean, this was a plea pursuant to an agreement during the plea allocation. He agreed to the terms of the, indicated that he agreed to the terms of the plea after having discussions with standby counsel. I mean, yes, there could have been more questions asked. But given the written plea agreement and the questions that were asked, what is deficient? I would argue that it is necessary, certainly was necessary here. Because, I mean, first the court, as your honor certainly know, has an obligation to make sure that there is a factual basis for the plea. And the statements by Mr. Stephenson never established either ongoing or contemporaneous at the time of the possession of the firearm. And that's what the statute requires for it to be constitutional and not suffer from vagueness concerns. The court has limited the interpretation for that. And the statements, either individually or taken together, don't establish that. The government has relied on a statement that was made, I believe it was in the pre-sentence report, that his last use of marijuana had been in April of 2017. Isn't that the month of the arrest? It's a month of the arrest, but he was arrested on April 24th. So if he had used marijuana one time on April 2nd, is that ongoing and contemporaneous? I would argue it doesn't even come close to that. Well, but it has to be looked at in light of the totality of circumstances which do include that plea agreement. But that's why a judge, the district court judge in this case, needed to question further. There wasn't anything specific having to do with my use of marijuana at the time of the possession, which was on April 24th. And that's the concern that we raised. And that, we would argue, is where the evidence or the factual basis for this plea fails. I know that I had, I'm sure your honors know as well, I had requested the opportunity to discuss the constitutionality of the statute. I don't know if that's something that the court wishes to hear any discussion of today or not. Yes, please. You submitted a supplemental brief, a letter to us about Fruin. Yes. The question, and we've asked either for the opportunity to file a supplemental and more, I guess, more fulsome brief to the court here or to send it back to the district court for it to be, for the issue to be fleshed out. But there is new litigation since Fruin that calls into question the constitutionality of this particular statute. Not of a scheme that limits the right to possess a firearm if you have been found by a court to have committed an act of domestic violence, or if you have a prior felony conviction, or things like that. Now, what are we to do with the fact that your client had an opportunity to raise the matter in the district court, but didn't? Well, his plea and, well, the judgment in the district court was 18 months before Fruin was decided. And I understand that Fruin is, I guess, currently it's the culmination of the second amendment jurisprudence out of the Supreme Court, but it certainly laid new groundwork for an analysis. What do you think adds, it adds? I'm sorry? What do you think Bruin adds that allows your client to recognize that he has a claim now that he wouldn't have before Bruin? The focus on the historical analysis. But that's been clear since Heller that the historical analysis is significant. The Bruin court focused in on that and made that the key. In one way that Heller didn't alert you to, or weren't alerted a defendant to. We were alerted, but Heller had also considered a different standard in that. And Bruin has focused that, which has led to a great deal of litigation now going on in the district courts about this particular issue. So what's the argument here? What is the constitutional challenge? The constitutional challenge is that a generalized claim that a person who uses marijuana does not have a constitutional right to possess a firearm in public for self-defense. Historically, persons who had impairments of some kind were not permitted, did not have a right to bear arms, either because of their age or some mental defect, whatever. And here's someone who's using a drug that affects that. Well, there's no requirement in the statute that the use of the drug be, or that the inability to possess a firearm is coexistent with the use of the drug. The statute allows for using a drug one week and the next week when it has no impact or no impairment on their- I thought you said that our precedent requires it to be contemporaneous use and possession. Use of the drug and possession of the gun. The statute is broad enough, even with ongoing and contemporaneous, that it doesn't require impairment by the use of the drug at the time of the possession. And there's no historical analogy or analysis for that type of limitation. Other limitations have resulted from findings by a court where there is due process involved. Here, there's simply no historical example that would fit this broad statement of the unlawful use of marijuana into it. And the historical analysis, as I've indicated in my letter, has been spelled out in the two district courts that wrote extensively about this and laid out the constitutional analysis. And again, if the court- I mean, we've asked for the opportunity to explore this more, and we certainly would love the opportunity to do that. All right? If there are no further questions, thank you very much. We'll hear from the government. Good morning. May it please the court. My name is Tiffany Lee, and I represent the United States. The district court did not abuse its discretion when it denied Mr. Stevenson's second attempt to withdraw his guilty plea on the claim that there was insufficient factual basis to support the Rule 11 plea. This court in United States v. Maher specifically stated that a district court is not required to weigh the evidence to assess whether it is even more likely than not that the defendant is guilty, nor does it require that the court be satisfied that a jury would return a verdict of guilty. And instead, Rule 11 requires that the court assure itself simply that the conduct to which the defendant admits is in fact an offense under statutory provision under which he is pleading guilty. That is what Mr. Stevenson did. Mr. Stevenson admitted that he was an unlawful user of a controlled one substance, marijuana. He admitted that he was addicted to it as part of the factual basis for the plea. Well, he admitted to it in the plea agreement. Where at the allocution did he admit to it? Because I saw the government proffered it. The court asked the defendant if he understood it, and he said he did. But unless I missed it, the court didn't ask him whether he agreed to it or whether your proffer was correct or true. Correct, Your Honor. That is true that he did not state himself that is correct, but he did say I understand that this is the factual basis to which I would be agreeing with in terms of serving as a sufficient basis for me to plead guilty. And then ultimately, he pled guilty to the crime of being an addicted user or a user of a controlled scheduled one substance who thereby was prohibited from possessing a firearm. We see all kinds of plea allocutions. Some are questions directed directly to the defendant. This is a proffer from the government. I would suggest that to minimize your trips up to this court, that you not have him ask just if he understands what the government is proffering but whether he agrees to what the government is proffering. I will return that message back to my office in terms of guiding our trial assistants in terms of trying to elicit that if this is a plea colloquy in which they are controlling what facts come out. I will say though, in United States v. Maher, this court also stated that you're not limited to the plea colloquy. The court also may review, get additional statements from counsel, from the defendant, from the government, but also may look to items such as the PSR. And in this case, you had a PSR in which the defendant admitted to smoking two blunts twice a day up until April of 2017, which was the time period of his arrest. He also admitted, according to the PSR. Remind me about the record. Does it say he smoked two blunts every day up through April, or does it just say the last time he used marijuana was in April? I think in paragraph 91 of the PSR, I had it that he had said, and I'll pull this up. Oh, here we go. He smoked one or two blunts on a daily basis. That's what it says, according to the PSR. So on a daily basis, one to two blunts. And then the next sentence? And then he asserted that the last he used marijuana was in April of 2017, which is unclear if that meant up until the date of his arrest. But certainly when he's saying that he smoked one or two blunts on a daily basis, it would seem to suggest that he was smoking one or two blunts daily up until the time of his arrest. And at the time of his arrest, they found a personal use amount of marijuana on his, either in the premises that was searched or on his person. But he also gave us that also puzzled me. What does the record reflect about where the marijuana was located? Again, I'm relying on what was stated in the pre-sentence report in terms of the offense conduct. And again. This is the one paragraph I did not note down as I was preparing my apologies. I will say that. I cannot find that quickly for you. My apologies, Your Honor. My confusion. There was an affidavit from an agent Farnham that it was recovered in the residence on a couch in Plainview. At the time of the plea, there's a reference to marijuana recovered outside the residence. And the plea agreement references the back of marijuana recovered in the hallway. But I'll look at the record on that. And as you say, you're relying principally on the PSR when you look outside the proper plea agreement. And then there's also the point in the PSR where he, post Miranda, paragraph 19, Mr. Stevenson admitted to being a user of marijuana as well. So looking at all those circumstances, the question returns to whether or not Judge Arcaro abused his discretion in denying Mr. Stevenson's motion to withdraw the guilty plea. And based on all these circumstances, it's the government's position that he did not abuse his discretion. And therefore, his decision to deny withdrawal should be affirmed. With respect to the constitutional issue that's been raised, first and foremost, Bruin did not disturb Heller, nor did it rule on the constitutionality of 922 G3, which is the provision at issue here. So in terms of a plain error analysis, there is nothing plain about any question as to, at this juncture, the constitutionality of 922 G3. In fact, Bruin, one of the justices in Bruin, said specifically that Bruin said nothing about who may lawfully possess a firearm or the requirements that need to be met in order to do so, nor did Bruin disturb anything that was said by the court in Heller or McDonald's. And in Heller, this court relied on Heller's jurisprudence, specifically in the context of the felon in possession prohibition against firearm possession, relied on that paragraph in Heller where the Supreme Court has stated, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill or laws forbidding the carrying of firearms in sensitive places, as schools and government buildings, et cetera. Again, Heller, that provision still holds. So, again, in the context of plain error analysis, there is no error here which can be viewed as plain, and therefore Mr. Stevenson simply just does not survive plain error review in terms of any attack on the constitutionality of 922 G3, which he forfeited. Unless the court has any further questions, the government rests on its brief. Thank you. Thank you. Your Honor, may I make one clarification of a detail? In the PSR, Mr. Stevenson stated that at the peak of his usage, he smoked one or two blunts on a daily basis, and that's not clarified anywhere. Thank you. Thank you both, and we will take the matter under advisory.